THE PEOPLE, PLAINTIFF AND RESPONDENT, *v.* BONHOME ET AL.,
DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Arecibo in a Prosecution
for Murder in the First Degree.

No. 700.—Decided April 27, 1915.

EVIDENCE.—A court commits no error in refusing to allow a witness to testify
to what the victim said to him when such statements have no logical rela-
tion to the act committed by the defendant.

ID.—CHARACTER AND REPUTATION—SELF-DEFENSE.—The bad character of a per-
son cannot be established by proof of isolated acts committed by said per-
son, but by showing the opinion the community has of him, and the evidence
must be confined to his general character, for the reputation of a person
cannot be assailed by proving that he was convicted of a specific crime.
However, as an exception to this rule, when self-defense is pleaded such
evidence is admissible.

NEW TRIAL—MALICE AND PREMEDITATION.—In this case the accused filed a mo-
tion for a new trial on the ground that the verdict was contrary to law and
to the evidence and that it was necessary to prove malice and premedita-
tion at the trial; *Held:* That after considering the facts the plea could not
be sustained.

The facts are stated in the opinion.

*Mr. Salvador Mestre, fiscal,* for The People.

*Messrs. Rossy & Guillermety* for the appellants.

MR. JUSTICE ALDREY delivered the opinion of the court.

The *Fiscal* of the District Court of Arecibo filed an infor-
mation therein charging Juan Bonhome and José Bonhome
with the crime of murder in the first degree and after trial
the jury found both defendants guilty as charged, with ex-
tenuating circumstances.

On the day set for sentence the defendants moved for a
new trial, which motion the court overruled and sentenced
them to imprisonment for life at hard labor. The defend-
ants appealed from the judgment and from the ruling deny-
ing a new trial, but they have not filed in this court any brief
in support of their appeal, as required by the rules of this
court. Their counsel only argued the case orally and at the
same time submitted a list of citations of judgments of dif-
ferent courts.

This being the status of the appeal and as the transcript of the record contains a statement of the evidence introduced at the trial and also a bill of the exceptions taken by the defendants during the same, we have only to consider the said exceptions and the question of whether the defendants should have been granted the new trial which they asked for.

The charge upon which the appellants were found guilty and sentenced is that on December 24, 1913, they wilfully, criminally, unlawfully, with malice aforethought and fixed and deliberate intention, treacherously attacked Eloy Solares with revolvers loaded with bullets, both defendants firing shots from their revolvers at Eloy Solares and inflicting upon him two mortal bullet wounds, one in the thorax which pierced the aorta and the other in the frontal region, the said wounds causing his death a few minutes after they were inflicted.

During the trial the defense called Teclo Marrero as a witness and he began his testimony by stating that on the night of December 16, 1913, on which day Eloy Solares was released from the Arecibo jail, the witness had a conversation with him, but when the witness attempted to relate what Eloy Solares had said to him the prosecution objected on the ground that it was hearsay evidence and that the conversation was remote inasmuch as it had taken place nine days before the commission of the acts which brought about the prosecution. The objection was sustained by the court and the defense noted an exception to the ruling.

What the defense sought to prove by this witness was that when he advised Eloy Solares upon his release from jail not to go to Manatí in order to avoid trouble with the Bonhomes, Solares replied that he would go so as not to be considered a coward and because he and Juan Bonhome both knew how to protect their own lives.

The court committed no error in refusing to allow the witness to state what Eloy Solares said to him, because it has no logical relation to the act committed by the defendant.

The other exception taken by the defense was to the ruling of the court refusing to admit in evidence two certificates of sentences imposed upon Solares, which were offered by the defense for the purpose of proving the bad character of the deceased. .

The bad character of a person cannot be established by proof of isolated acts committed by said person, but by showing the opinion which the community has of him, and the evidence must be confined to his general character, for the reputation of a person cannot be assailed by proving that he was convicted of a specific crime. 21 Cyc., 910.

However, as an exception to this rule, when self-defense is pleaded such evidence is admissible. 21 Cyc., 908. But self-defense was not pleaded in this case and the transcript of the record does not contain the slightest indication of an attempt to establish it, for even the testimony of the witnesses for the defense shows that the killing was done in a treacherous and premeditated manner. Therefore, the lower court did not err in refusing to admit the said evidence.

Passing now to the ruling of the court refusing a new trial, we consider that the action of the court in overruling the motion was correct.

The motion was based upon the ground that the verdict was contrary to law and to the evidence, it being alleged that it was contrary to the evidence because malice and premeditation on the part of each of the defendants should have been proved at the trial; that all the evidence for the prosecution is that upon meeting Eloy Solares at noon in a street of Manatí Juan Bonhome fired several revolver shots at him while Solares was throwing stones at Bonhome, the fourth shot inflicting a wound in his breast as Solares was stooping, puncturing the aorta and causing his death; that the evidence against José Bonhome, is that when he heard the shots which were being fired by his brother Juan he went out into the street and fired at Solares after the latter had

fallen to the ground in a dying condition from the wound which Juan had inflicted, and that it is unquestionable that neither malice nor premeditation has been shown on the part of José who is not criminally liable because he fired at a person who was already dead.

We believe that there is no act which could establish more clearly the crime of murder in the first degree than the one which we are considering or in which clearer, stronger and more convincing evidence of the crime and its circumstances could be presented, for even the witnesses for the defense agreed with those for the prosecution as to the manner in which the acts were committed, and the former testified to nothing new except the previous affrays between one of the appellants and the deceased.

As the evidence is extremely strong and is not contradictory, we will only summarize the facts as established.

During a strike raised by Juan Bonhome in the tobacco factory of Manatí in March, 1912, on account of a difference which he had with a foreman, Eloy Solares, followed by other cigar-makers, went to work in the said factory and in the afternoon Solares asked the police to protect him as he had been threatened by Juan Bonhome. They engaged in a dispute that evening during which Eloy Solares fired five shots at Juan Bonhome, inflicting four wounds upon him. For that act Solares was convicted of the crime of aggravated assault and battery and sentenced to eighteen months' imprisonment in jail, the judgment having been affirmed by this court on April 30, 1913. On December 16 of the same year Solares was pardoned and released and returned to Manatí.

After that quarrel Juan Bonhome told José Márquez Muriel (pages 21–22) who was of the same color as Solares and a little shorter but somewhat stouter, to be careful in going about, because if he had not seen the back of his neck he would have killed him under the belief that he was Solares

whom he was going to kill if he caught him. When Solares went to jail Juan Bonhome said to Bienvenido Laguna (page 23) that he would revenge himself on Solares for the scar which he had made on his eye and for the teeth which he was lacking and that he was going to make him a present of four leaden bonbons. He also said to Luis Robles some days before the death of Solares (page 24) that Solares had given him four biscuits and he was going to return him eight. He said to Manuel Vanga (page 23) during the first few days after the arrival of Solares at Manatí, on the 19th of the month in which he died, that he would get even with Solares for the bullet holes in his nose by killing him. On the day that Solares was pardoned, Antonio La O (page 22) heard a conversation between the two defendants in which Juan asked José whether Solares had been pardoned, saying then that if Solares had shot him four times he would shoot Solares eight times on his arrival. Furthermore, Nicolás Santana, a mechanic, (page 21) repaired a Smith revolver which he identified as the one taken from José Bonhome and which the Bonhome brothers had taken to him on the night of December 19, 1913, to be repaired, and said that when they returned for it two days later, in the evening, Juan took it, twirled the empty cylinder around several times and told Santana that it belonged to his brother Pepe who also spun the cylinder around. Juan then said to Pepe, "What do you think of it? Is it sure? Will it misfire?" Whereupon Santana said that he guaranteed his work.

As to the manner in which the facts developed on December 24, 1913, it appears that at noon while Eloy Solares was talking to Andrés Larregui, *alias* Nango, (page 8) in Pozo Street, Manatí, with his coat across his shoulder and leaning against the horse which the latter was riding, Higinio Pastoriza approached and handed him a letter, telling him not to stand there so confidently because he who has enemies should be watchful; that just then the report was heard of

a revolver fired by Juan Bonhome while Solares' back was turned to him and then Bonhome fired three more shots at Solares while the latter retreated, picking up stones from the ground and throwing them at Bonhome, during which he was wounded in the chest; that José Bonhome then came up Pozo Street with a revolver in his hand and several peons who were on the spot advised Solares, who had gone behind an almond tree for protection, to run or José Bonhome would kill him, and while Solares was leaving the square of Manatí, jumping over a railing to seek refuge in Mr. Brunet's house, José Bonhome fired several shots at him, the last after Solares had already fallen at the entrance to Mr. Brunet's house, the bullet taking effect in his forehead.

When Dr. Blásquez arrived a few minutes later Solares was still alive, but he died almost immediately thereafter. The wound in the breast pierced the aorta and was inflicted while he was standing on a lower level than his assailant, and although the wound was necessarily mortal it did not cause instant death. The wound in the forehead, which he received afterwards while lying on the ground, was also necessarily fatal and caused his death within a few minutes.

This statement of the facts is sufficient to show that any allegation made with regard to whether premeditation and malice on the part of each of the appellants were proven cannot be sustained, and much less can it be contended, as the attorneys for the defendants claim, that José Bonhome fired at a person who was already dead, for there is not a single fact to support such a contention or from which it could be even deduced.

The judgment appealed from should be

*Affirmed.*

Justices Wolf, del Toro and Hutchison concurred.

Mr. Chief Justice Hernández took no part in the decision of this case.